**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **CLAUDE CORMIER,** | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | **Complaint and Jury Demand** |
| | : | |
| **U.S. FACILITIES, INC.,** | : | |
| **Defendant.** | : | |

## CIVIL ACTION

Plaintiff, Claude Cormier (hereinafter "Plaintiff"), by and through his attorney, Koller Law, LLC, brings this civil matter against U.S. Facilities, Inc. (hereinafter "Defendant"), for violations of the Age Discrimination in Employment Act ("ADEA"), the Americans with Disabilities Act of 1990, as amended ("ADA"), the Pennsylvania Human Relations Act ("PHRA"), the Philadelphia Fair Practices Ordinance ("PFPO") and the Family and Medical Leave Act of 1993, as amended ("FMLA"). In support thereof, Plaintiff avers as follows:

## THE PARTIES

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
2. Plaintiff is an adult individual residing in Philadelphia, PA.
3. Upon information and belief, Defendant U.S. Facilities, Inc. is a facilities management and infrastructure support services with a location and corporate headquarters located at 1835

Market Street, Suite 780, Philadelphia, PA 19103.

4. Defendant is an entity engaged in an industry or activity affecting commerce which employs 50 or more employees in all of its offices for each working day during each of 20 or more calendar workweek in the current or preceding year.

5. At all times material hereto, Plaintiff was employed by Defendant for at least twelve hundred and fifty (1,250) hours of service during the twelve-month period prior to requiring leave.

6. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

7. At all times relevant hereto, Defendants employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

**JURISDICTION AND VENUE**

8. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

9. The Court may properly maintain personal jurisdiction over Defendants because the Defendants' contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

10. The Court may exercise original subject-matter jurisdiction over the instant action pursuant

to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

11. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

12. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendants are located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

**EXHAUSTION OF ADMINISTRATIVE REMEDIES**

13. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

14. Plaintiff exhausted his administrative remedies under the ADEA, the ADA, the PHRA and the PFPO.

15. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC"), digitally signed on July 23, 2026, alleging age, disability and associational disability discrimination as well as retaliation against Defendant.

16. The Charge was assigned a Charge Number 530-2026-08519 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

17. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge and that Notice is dated September 18, 2026.

18. Prior to the filing of this action, Plaintiff notified the EEOC of his intent to proceed with a lawsuit in federal court.

19. Plaintiff files the instant Complaint within ninety (90) days of his receipt of his Right to Sue in this matter, as it relates to his federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to his PHRA and PFPO claims.

20. Plaintiff has exhausted his administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

## PLAINTIFF’S EMPLOYMENT HISTORY

21. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

22. Plaintiff was born in 1953.

23. In 2004, Defendant hired Plaintiff in the position of First Class Mechanic Painter.

24. Plaintiff was well qualified for his position and performed well.

25. In 2019, Defendant promoted Plaintiff to Maintenance Supervisor.

26. Plaintiff was well qualified for his position and performed well.

27. As a Maintenance Supervisor, Plaintiff supervised maintenance operations at correctional facilities, namely Curran-Frumhold Correctional Facility, Philadelphia Industrial Correctional Center and Riverside Correctional Facility, serviced by Defendant under its contract with the Philadelphia Department of Corrections.

## PLAINTIFF IS DISABLED

28. Plaintiff has the serious health condition of heart disease which is considered to be a disability under the Americans with Disabilities Act of 1990, as amended (“ADA”), the Pennsylvania Human Relations Act (“PHRA”) and the Philadelphia Fair Practices Ordinance (“PFPO”).

29. The major life activities affected by heart disease include, but are not limited to, performing manual tasks, circulatory function and cardiovascular function.

**PLAINTIFF'S SON IS DISABLED**

30. Plaintiff's son has the serious health conditions of panuveitis and retinal vasculitis which are considered to be disabilities under the ADA, the PHRA and the PFPO.

31. The major life activities affected by panuveitis and retinal vasculitis include, but are not limited to, sleeping, concentrating, seeing, reading and working.

**THE VICE PRESIDENT OF CORRECTIONAL FACILITIES**

32. In or around 2023, John Carroll, Vice President of Correctional Facilities, began to regularly ask Plaintiff when he intended to retire and "you're still here?", or words to that effect on an approximately monthly basis.

33. Upon information and belief, Carroll did not ask other Maintenance Supervisors when they intended to retire or expressed surprise that they were still there.

**PLAINTIFF REQUESTED A REASONABLE ACCOMODATION DUE TO HIS DISABILITY**

34. Defendant's operations were chronically understaffed at the supervisory level, and as a result, Plaintiff was regularly required to work double shifts, remaining on-site from his normal 4:00 p.m. to midnight shift through the following morning.

35. This sustained pattern of excessive overtime was directly at odds with his Cardiologist's medical advice.

36. Importantly, newly hired Maintenance Supervisors were not placed on Plaintiff's schedule.

37. In addition, Carroll had previously informed Plaintiff that he did not want Plaintiff to work double shifts.

38. On or about November 21, 2025, Plaintiff submitted a physician's note to Defendant formally requesting the reasonable accommodation that he no longer be required to work overtime or double shifts due to his disability.

## DEFENDANT RETALIATED AGAINST PLAINTIFF FOLLOWING HIS REASONABLE ACCOMMODATION REQUEST AND REQUEST FOR FAMILY AND MEDICAL LEAVE ACT LEAVE ("FMLA")

39. However, Defendant retaliated against Plaintiff upon receiving his accommodation request.

40. Shortly after Plaintiff submitted his physician's note, Carroll unilaterally changed Plaintiff's days off from Monday and Tuesday to Wednesday and Thursday.

41. Plaintiff had previously communicated to Carroll the specific reason he required Mondays and Tuesdays off: he needed those days to transport his son to medical appointments in Massachusetts and to attend Cardiologist appointments for his disability.

42. Plaintiff's son's disabilities are serious and progressive eye diseases that may cause him to lose his sight should he not receive continuous treatment.

43. Carroll was fully aware of this critical family obligation.

44. Upon information and belief, there was no legitimate business reason for changing Plaintiff's schedule, as Carroll swapped Plaintiff's schedule with Marcleve Mitchell (non-disabled, late 40's/early 50's), Maintenance Supervisor.

45. Despite Plaintiff's objections, Carroll refused to restore his prior schedule, forcing him to choose between his employment and his son's medical care.

46. Importantly, Plaintiff has been his son's primary caregiver and transportation provider for ongoing medical treatment.

47. He previously took leave under Intermittent Family and Medical Leave Act ("FMLA") to provide care for his son, and Carroll was aware of both his son's medical conditions and Plaintiff's caregiving role.

48. Defendant's retaliatory scheduling change, made with full knowledge of Plaintiff's son's disability and his need for those specific days off, constitutes precisely this form of unlawful discrimination.

**DEFENDANT DENIED PLAINTIFF'S OFFER TO WORK ADDITIONAL HOURS TO ASSIST WITH THE SHORT STAFFING**

49. In addition, Plaintiff continued to have to work double shifts if his relieving Maintenance Supervisor called out and he could not secure coverage on his own.

50. From in or around December 2025 to in or around March 2026, Carroll wanted all supervisors to cover all open shifts due to short staffing.

51. Due to Plaintiff's reasonable accommodation request, he was unable to work these double shifts.

52. Carroll and other Maintenance Supervisors were visibly irritated with Plaintiff's reasonable accommodation request and subjected him to snide comments regarding this.

53. In addition, Carroll would not respond to Plaintiff's emails, excluded Plaintiff from staff meeting, did not provide Plaintiff with a boot allowance, did not invite Plaintiff to the company Holiday Party and did not provide Plaintiff with a company winter coat.

54. Despite his reasonable accommodation request, Plaintiff offered to work additional hours to assist with the short staffing.

55. However, John Jeebouy, Assistant Project Manager, denied Plaintiff's offer, stating that if he could not work the full shift then he could not work additional time due to Carroll's instructions, or words to that effect.

**PLAINTIFF CHECKED OFF ITEMS IN THE TOOL LOG FOR A SUPERVISOR WHO FAILED TO DO SO**

56. Defendant maintains a tool sign-out log at the correctional facility, pursuant to which supervisors are responsible for recording when tools are issued and returned.

57. Tony Tonzelli (non-disabled, early 50's), the supervisor on the shift preceding Plaintiff's, had a documented pattern of failing to properly sign tools back in on the log.

58. In early April 2026, Plaintiff began checking off items that Tonzelli had failed to properly document, an entirely reasonable supervisory practice given his predecessor's dereliction.

**PLAINTIFF REALIZED A HAMMER WAS MISSING FROM TONZELLI'S SHIFT AND NOTIFIED HIM OF THIS**

59. On one occasion, Plaintiff initialed the return of a hammer.

60. When he subsequently observed that the hammer was not in its designated location, he whited out his checkmark, itself an act of conscientiousness, not falsification.

61. Plaintiff then took multiple affirmative steps to address the missing tool: he informed Tonzelli directly in person and was told not to worry about it, as it was reportedly somewhere in the shop; he also left Tonzelli multiple written notes about the matter after Tonzelli had left for the end of his shift.

62. These actions are wholly inconsistent with any intent to deceive or falsify records.

**PLAINTIFF NOTICED THE HAMMER WAS STILL MISSING AFTER WORKING IN A DIFFERENT LOCATION FOR SEVERAL DAYS**

63. Plaintiff then worked at a different location for several days.

64. Upon returning, Plaintiff observed that the hammer had still not been returned to its proper location.

**PLAINTIFF NOTIFIED TONZELLI THE HAMMER WAS STILL MISSING, BUT TONZELLI FALSELY INFORMED CARROLL THAT PLAINTIFF HAD JUST NOTIFIED HIM ABOUT IT**

65. He again brought the matter to Tonzelli's attention.

66. Rather than resolving the issue, Tonzelli proceeded to report the matter to Carroll, but falsely represented that Plaintiff had only just informed him of the missing hammer.

67. This was a lie.

68. Plaintiff had notified Tonzelli days earlier, both verbally and in writing.

**CARROLL SCREAMED AT PLAINTIFF AND DID NOT ALLOW HIM TO RETURN TO WORK**

69. Carroll's response was immediate, disproportionate, and deeply unprofessional.

70. He summoned Plaintiff to his office and screamed at him, with the door open, ensuring that colleagues and others could witness Plaintiff's humiliation.

71. Carroll then told Plaintiff he could not return to work.

72. When Plaintiff asked to retrieve water from his car, Carroll gave him permission but added, sarcastically and cruelly, that he should not "jump off fucking the bridge" while he was outside.

73. This gratuitous remark was demeaning, humiliating, and entirely unwarranted.

**THE HAMMER WAS LOCATED IN THE SHOP AND PLAINTIFF NOTIFIED THE ASSISTANT PROJECT MANAGER OF THIS**

74. The hammer was subsequently located in the shop, exactly where Tonzelli had indicated it might be, simply not in its designated position.

75. Plaintiff promptly informed the Assistant Project Manager of this fact.

76. He was told that the matter had already been reported to the prison system, and that Carroll could handle discipline as he saw fit.

## CARROLL TERMINATED PLAINTIFF

77. On April 13, 2026, Carroll terminated Plaintiff's employment, citing falsification of records.
78. This termination was issued without any prior disciplinary write-ups or progressive discipline.
79. Critically, Tonzelli, the individual who failed to sign in tools in the first instance, whose negligence created the entire situation, and who lied to management about when he had been notified, was not disciplined or terminated by Defendant.
80. Plaintiff was 72 years old at the time of his termination.
81. Importantly, Tonzelli is approximately 20 years younger than Plaintiff and is non-disabled.
82. Defendant discriminated against Plaintiff due to his age, disability, and associational disability, denied him a reasonable accommodation and retaliated against him for requesting a reasonable accommodation in violation of the ADEA, the ADA, the PHRA and the PFPO.
83. In addition, Defendant retaliated against Plaintiff for utilizing his rights under the FMLA in violation of the FMLA.
84. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – AGE DISCRIMINATION
## AGE DISCRIMINATION IN EMPLOYMENT ACT

85. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.
86. Plaintiff was born in 1953.
87. Plaintiff was qualified to perform the job.

88. Defendant terminated Plaintiff.

89. Defendant treated younger employees more favorably than Plaintiff.

90. Defendant has no legitimate non-discriminatory reason for its actions.

91. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT II – AGE DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

92. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

93. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his age.

94. As a result of Defendant’s unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT III – AGE DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

95. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

96. The foregoing conduct by Defendant constitutes unlawful discrimination against Plaintiff on the basis of his age.

97. As a result of Defendant’s unlawful discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of

this Complaint, *infra*.

**COUNT IV – DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

98. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

99. Plaintiff is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

100. Plaintiff was qualified to perform the job.

101. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

102. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

103. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

104. Plaintiff's disability motivated Defendant's decision to take adverse actions against Plaintiff.

105. The purported reason for Defendant's decision is pretextual.

106. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

107. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

108. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered

damages as set forth herein.

109. Defendant's conduct was willful or with reckless disregard to Plaintiff's federally protected statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

110. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

111. Plaintiff is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

112. Plaintiff was qualified to perform the job.

113. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

114. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

115. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

116. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

117. The purported reason for Defendant's decision is pretextual.

118. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

119. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

120. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – DISABILITY DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

121. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

122. Plaintiff is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff has, or had at all times relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff had a record of such an impairment or because Plaintiff was regarded as and/or perceived by Defendant and its agents as being disabled.

123. Plaintiff was qualified to perform the job.

124. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

125. Circumstances indicated that Plaintiff's disability was the reason for the adverse employment action.

126. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's adverse employment actions.

127. Plaintiff's disability motivated Defendant's decision to terminate Plaintiff.

128. The purported reason for Defendant's decision is pretextual.

129. Others similarly situated but outside of Plaintiff's protected class were treated more

favorably.

130. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

131. As a result of Defendant's unlawful disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VII – ASSOCIATIONAL DISABILITY DISCRIMINATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

132. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

133. Plaintiff's son is a "qualified individual with a disability" as that term is defined under the ADA because Plaintiff's son has, or had at all time relevant hereto, disabilities that substantially limits or limited one or more major life activities or because Plaintiff's son had a record of such an impairment or because Plaintiff's son was regarded as and/or perceived by Defendant and its agents as being disabled.

134. Plaintiff was qualified to perform the job.

135. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

136. Circumstances indicated that Plaintiff's son's disabilities were the reason for the adverse employment action.

137. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

138. Plaintiff's son's disabilities motivated Defendant's decision to terminate Plaintiff.

139. The purported reason for Defendant's decision is pretextual.

140. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

141. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

142. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VIII – ASSOCIATIONAL DISABILITY DISCRIMINATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

143. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

144. Plaintiff's son is a "qualified individual with a disability" as that term is defined under the PHRA because Plaintiff's son has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff's son had a record of such an impairment or because Plaintiff's son was regarded as and/or perceived by Defendant and its agents as being disabled.

145. Plaintiff was qualified to perform the job.

146. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

147. Circumstances indicated that Plaintiff's son's disabilities were the reason for the adverse employment action.

148. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

149. Plaintiff's son's disabilities motivated Defendant's decision to terminate Plaintiff.

150. The purported reason for Defendant's decision is pretextual.

151. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

152. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

153. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT IX – ASSOCIATIONAL DISABILITY DISCRIMINATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

154. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

155. Plaintiff's son is a "qualified individual with a disability" as that term is defined under the PFPO because Plaintiff's son has, or had at all time relevant hereto, a disability that substantially limits or limited one or more major life activities or because Plaintiff's son had a record of such an impairment or because Plaintiff's son was regarded as and/or perceived by Defendant and its agents as being disabled.

156. Plaintiff was qualified to perform the job.

157. Plaintiff was subject to an adverse employment action, including, but not limited to termination.

158. Circumstances indicated that Plaintiff's son's disabilities were the reason for the adverse employment action.

159. Defendant did not have a legitimate non-discriminatory reason for Plaintiff's termination.

160. Plaintiff's son's disabilities motivated Defendant's decision to terminate Plaintiff.

161. The purported reason for Defendant's decision is pretextual.

162. Others similarly situated but outside of Plaintiff's protected class were treated more favorably.

163. The above actions by Defendant also constitute a failure to accommodate and a failure to engage in the required interactive process.

164. As a result of Defendant's unlawful associational disability discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT X – RETALIATION**
**AMERICANS WITH DISABILITIES ACT OF 1990, AS AMENDED**

165. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

166. Plaintiff engaged in activity protected by the ADA.

167. Plaintiff requested a reasonable accommodation due to his and his son's disabilities to Defendant.

168. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

169. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XI – RETALIATION**
**PENNSYLVANIA HUMAN RELATIONS ACT**

170. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

171. Plaintiff engaged in activity protected by the PHRA.

172. Plaintiff requested a reasonable accommodation due to his and his son's disabilities.

173. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

174. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XII – RETALIATION**
**PHILADELPHIA FAIR PRACTICES ORDINANCE**

175. Plaintiff incorporates by reference each allegation contained in the preceding paragraphs as if the same were set forth more fully at length herein.

176. Plaintiff engaged in activity protected by the PFPO.

177. Plaintiff requested a reasonable accommodations due to his and his son's disabilities.

178. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

179. There exists a causal connection between Plaintiff's participation on the protected activity and the adverse employment action.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

**COUNT XIII – INTERFERENCE**
**<u>FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED</u>**

180. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

181. The FMLA declares it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

182. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA leave to care for his son's serious health conditions.

183. Defendant acted in bad faith by interfering with Plaintiff's rights under the FMLA.

184. Defendant knowingly, intentionally, willfully and/or recklessly acted in disregard of the duty to grant Plaintiff's FMLA-related request for leave.

185. Defendant's aforementioned actions violate 29 U.S.C. § 2615(a)(1) of the Family and Medical Leave Act in that the employer cannot "interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under" any right provided by the FMLA. 29 U.S.C. 2615(a)(1).

186. As a direct and proximate result of Defendant's unlawful interference with Plaintiff's rights under the FMLA, Plaintiff has been deprived of economic and non-economic benefits including, but not limited to lost wages, pain and suffering, mental anguish, humiliation, loss of fringe benefits, disruption of his personal life and loss of enjoyment of the ordinary pleasures of life.

187. Plaintiff demands judgment in his favor against Defendant for all available equitable relief including, but not limited to: unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

188. Plaintiff further demands judgment in his favor against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under § 2617(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the Family and Medical Leave Act of 1993.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## COUNT XIV – RETALIATION
## FAMILY AND MEDICAL LEAVE ACT OF 1993, AS AMENDED

189. Plaintiff incorporates all the above paragraphs as if they were set forth at length herein.

190. Pursuant to 29 U.S.C. § 2611(2)(A) and 29 U.S.C. § 2612(a)(1)(C), Plaintiff was eligible for leave under the FMLA.

191. At all times material, Defendant knew, or should have known, of Plaintiff's need for FMLA Leave to care for his son's serious medical conditions.

192. Plaintiff gave Defendant sufficient information to allow it to understand that he needed leave for FMLA-qualifying reasons.

193. The retaliation occurred in the form of the continued implementation of a policy that discourages and interferes with Plaintiff's right to invoke his federally protected rights under the FMLA.

194. As a result of Plaintiff's attempt to invoke his FMLA rights, by requesting and utilizing his FMLA rights, Defendant has retaliated against Plaintiff by terminating his employment.

195. Defendant's motivation for retaliating against Plaintiff was connected causally to Plaintiff's FMLA leave.

196. Defendant has acted in bad faith by retaliating against Plaintiff in violation of the FMLA.

197. As a direct and proximate result of Defendant's discharge of Plaintiff, Plaintiff is and was deprived of economic and non-economic benefits resulting from Defendant's willful and/or non-willful actions including but not limited to: loss of back pay, loss of increase in salary, loss of benefits preceding Plaintiff's filing of the lawsuit, cost of providing care, and double liquidated damages under the FMLA for violations not made in good faith.

198. Plaintiff demands judgment against Defendant for all available equitable relief including, but not limited to: reinstatement to job position, full restoration of all leave and health benefits, to which Plaintiff was entitled, and any additional unpaid leave up to the maximum permitted by the FMLA including but not limited to doubling the damages proven inclusive of all wages, salary, employment benefits or other compensation denied or lost.

199. Plaintiff further demands favorable judgment against Defendant for all interest on the monetary benefits calculated at the prevailing rate, an additional amount equal to those sums, as liquidated damages under §107(a), fees and costs including the allowance of reasonable attorneys' fees, expert witness fees and other costs of the action against Defendant and such other orders and further relief as may be necessary and appropriate to effectuate the objectives of the FMLA.

**WHEREFORE**, Plaintiff demands compensatory and liquidated damages in addition to counsel fees and costs.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Claude Cormier, requests that the Court grant him the following relief against Defendants:

(a) Damages for past and future wage loss;

(b) Compensatory damages for other economic and non-economic harm including, *inter alia*, mental anguish and/or emotional distress;

(c) Punitive damages;

(d) Liquidated damages;

(e) Reasonable attorneys' fees;

(f) Recoverable costs;

(g) Pre and post judgment interest;

(h) An allowance to compensate for negative tax consequences of a lump sum award in a single tax year;

(i) Order Defendants to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(j) Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## **JURY TRIAL DEMAND**

Demand is hereby made for a trial by jury as to all issues.

## **CERTIFICATION**

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

**RESPECTFULLY SUBMITTED,**

**KOLLER LAW, LLC**

Date: November 6, 2026 **By:** ***/s/David M. Koller***

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*